UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------X
DANAE L. BUTLER,

                              **REPORT AND
RECOMMENDATION**

                Plaintiff,            CV 24–1051 (GRB)(AYS)

          -against-

COUNTY OF SUFFOLK, SUFFOLK
COUNTY POLICE DEPARTMENT,
Police Officers and/or Detectives JOHN
& JANE DOES 1- 10 in their individual
and collective capacities, TIMOTHY
BUTLER, & BRIAN BUTLER,

               Defendants.
----------------------------------------------------X
**SHIELDS, Magistrate Judge,**

Plaintiff Danae L. Butler ("Plaintiff"), commenced this action against the County of

Suffolk (the "County" or "Defendant"), Timothy Butler ("Timothy") and Brian Butler, alleging

claims against the County pursuant to 42 U.S.C. § 1983 as well as claims under New York State

Law for conspiracy, negligence/gross/negligence, vicarious liability and respondeat superior,

false imprisonment and intentional infliction of emotional distress.

Presently before this Court, upon referral by the Honorable Gary R. Brown for Report

and Recommendation, (see Order Referring Motions dated 05/23/2024), is the County's motion

to dismiss the Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (See

Docket Entry ("DE") [54].) As discussed below, this Court respectfully recommends that the

motion be granted.

BACKGROUND

I.      Documents Considered

As is required in the context of this motion to dismiss, the factual allegations in the Complaint, though disputed by the Defendant, are accepted to be true for purposes of this motion, and all reasonable inferences are drawn therefrom in favor of the Plaintiff.

While facts to consider in the context of a Rule 12 motion to dismiss are generally limited to those set forth in the pleadings, a court may consider matters outside of the pleadings under certain circumstances. Specifically, in the context of a Rule 12(b)(6) motion, a court may consider: (1) documents attached to the Complaint as exhibits or incorporated by reference therein; (2) matters of which judicial notice may be taken; or (3) documents upon the terms and effects of which the Complaint "relies heavily" and which are, thus, rendered "integral" to the Complaint." Chambers v. Time Warner, Inc., 282 F.3d 147, 152-153 (2d Cir. 2002); see Int'l Audiotext Network, Inc. v. Am. Tel. and Tel. Co., 62 F.3d 69, 72 (2d Cir. 1995). Moreover. "[a] court may take judicial notice of documents filed in another court not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings." Glob. Network Commc'ns, Inc. v. City of New York, 458 F.3d 150, 157 (2d Cir. 2006) (quoting Int'l Star Class Yacht Racing Ass'n Tommy Hilfiger U.S.A., Inc., 146 F.3d 66, 70 (2d Cir. 1998)).

The Court turns now to discuss the facts set forth in Plaintiff's Complaint, construed in her favor.

II.     Facts

        A.      Background

        1.      The Order of Protection

Plaintiff Danae L. Butler filed for divorce from Timothy. (Compl., DE [1], ¶ 30.) On July 7, 2022, Plaintiff received an order of protection from her estranged husband. (Id. ¶¶ 32-35.)

### 2. November 12, 2022

On November 12, 2022, at approximately 9:00-10:00 p.m., Plaintiff called 911 to report that her husband was preventing her from leaving the basement of the marital home, and verbally attacking and threatening her. (Compl., ¶ 44.) Timothy also called 911, claiming that Plaintiff was threatening him with a firearm. (Id. ¶ 45.) Officers from the Suffolk County Police Department ("SCPD") responded to the home to investigate the claims. (Id.) Timothy's brother, Brian Butler, a retired SCPD officer also arrived at the scene. (Id. ¶ 46.) SCPD officers did not arrest Timothy. (Id. ¶ 47.) Rather, along with Brian Butler and the officers left the house. (Id. ¶ 48.) At approximately 10:00 p.m., Plaintiff again called 911, claiming that she still felt unsafe with Timothy. (Id.) One of the SCPD officers who responded to the first call responded to the second call as well. (Id.) Again, Brian Butler also arrived at the home. (Id. ¶ 49.) SCPD officers engaged in discussions with Brian Butler. Rather than arrest Timothy, the officers allowed him to leave the residence with Brian Butler. (Id. ¶¶ 51, 53.) At approximately 5:30 a.m. on November 13, 2022, Timothy returned to the house and allegedly physically and sexually assaulted the Plaintiff. (Id. ¶¶ 54-55.) As a result, Timothy was arrested and charged with rape in the first degree, in addition to other crimes. (Id. ¶¶ 60-61.)

### B. Procedural History

Plaintiff commenced this action on February 9, 2024. (DE [1].) (See generally Compl.) On March 27, 2024, Timothy filed a motion to dismiss. (DE [17].) On May 1, 2023, he filed an amended motion to dismiss. (DE [25].) On May 10, 2024, Defendant filed a pre-motion letter requesting leave to move to dismiss. (DE [27], [28].) On May 23, 2024, the pending motion, as

3

well as any dispositive pretrial motions, were referred to the undersigned for a Report and Recommendation. (See Order Referring Motions dated 05/23/2024.) On July 17, 2024, the Court issued a Report and Recommendation recommending that Timothy's motion to dismiss, and amended motion to dismiss be denied without prejudice to renewal as the motions were improper. (Report and Recommendation dated 07/17/2024.) On the same day, this Court waived its pre-motion conference requirement and directed that within five (5) days of the District Court's final decision on Defendant Timothy's motion to dismiss, all parties were directed to confer and submit a proposed briefing schedule for this Court's review. (Order dated 07/17/2024.) On September 4, 2024, Brian Butler was dismissed from the case without prejudice. (Order Dismissing Parties dated 09/04/2024.) On September 18, 2024, the District Court adopted the July 17, 2024 Report and Recommendation in its entirety. (Order Adopting Report and Recommendation dated 09/18/2024.) On September 24, 2024, this Court issued a briefing schedule for the instant motion. (See Scheduling Order dated 09/24/2024.) The instant motion was filed on March 24, 2025. (DE [54].)

III.    The Motion to Dismiss

Plaintiff asserts the following claims against the County pursuant to 42 U.S.C. § 1983: (1) a cause of action alleging the Defendants "intentionally refuse to adhere to their duties" as police officers; (2) a Monell claim against the County; and (3) two claims of conspiracy against the County, John Doe defendants, and Brian Butler. Plaintiff also asserts the following claims under New York State Law against the County: (1) conspiracy; (2) negligence/gross negligence; (3) vicarious liability and respondeat superior claims; (4) false imprisonment and (5) intentional infliction of emotional distress. The County seeks dismissal of the Complaint pursuant to rule 12(b)(6) of the Federal Rules of Civil Procedure.

4

Defendant argues that the complaint must be dismissed because Plaintiff fails to plead facts which would have required the County to arrest Timothy on November 12, 2022. The County argues that because the remainder of Plaintiff's claims against the County flow from Plaintiff's claim that the responding officers refused to adhere to their duties as police officers, they must be dismissed as well. Finally, in the event that that the County's motion is denied, the County requests that the Court require the Plaintiff to submit a more concise pleading, pursuant to Fed. R. Civ. P. 8(a).

The Court now turns to the merits of the motion.

DISCUSSION

I.      Legal Principles: Standards Applicable on Motions to Dismiss

A.      Rule 12(b)(6)

To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009) (quoting, Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)); see also Arista Records, LLC v. Doe 3, 604 F.3d 110, 119–20 (2d Cir. 2010). Facial plausibility is established by pleading sufficient factual content to allow a court to reasonably infer the defendant's liability. Twombly, 550 U.S. at 556. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 555. Nor is a pleading that offers nothing more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," sufficient. Iqbal, 556 U.S. at 678 (2009) (quoting Twombly, 550 U.S. at 555).

With these standards in mind, the Court turns to assess the viability of Plaintiff's claims.

II.     Failure to State a Claim

A.       Extrinsic Materials

At the outset, the Court notes that Plaintiff has failed to attach the restraining order at issue to the Complaint, or even detail the nature of the July 7, 2022 Temporary Order of Protection. Plaintiff attempts to overcome this pleading defect by attaching the order of protection as an exhibit in her opposition papers. (Pl. Opp., Ex. 1, DE [54-6].)

On a motion to dismiss, a court must generally "limit itself to the facts stated in the complaint." Field Day, LLC v. Cnty. of Suffolk, 463 F.3d 167, 192 (2d Cir. 2006) (quoting Hayden v. Cnty. of Nassau, 180 F.3d 42, 54 (2d Cir. 1999)). In that context, "[a] court's task is to assess the legal feasibility of the complaint; it is not to assess the weight of the evidence that might be offered on either side." Lynch v. City of New York, 952 F.3d 67, 75 (2d Cir. 2020). "The purpose of Rule 12(b)(6) is to test, in a streamlined fashion, the formal sufficiency of the plaintiff's statement of a claim for relief *without* resolving a contest regarding its substantive merits. The Rule thus assesses the legal feasibility of the complaint, but does not weigh the evidence that might be offered to support it." Glob. Network Commc'ns, Inc. v. City of New York, 458 F.3d 150, 155 (2d Cir. 2006).

"In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010). As the Second Circuit recently reaffirmed in Lynch, "[i]t is well established that a pleading is deemed to include any 'written instrument' that is attached to it as 'an exhibit,' or is incorporated in it by reference." Lynch, 952 F.3d at 79 (citations omitted). Courts may also consider "matters of which judicial notice may be

6

taken." Goel v. Bunge, Ltd., 820 F.3d 554, 559 (2d Cir. 2016) (quoting Concord Assocs., L.P. v. Entm't Props. Tr., 817 F.3d 46, 51 n.2 (2d Cir. 2016)).

A court can also consider documents that are "integral to" the complaint. Goel, 820 F.3d at 559. In order for a document to meet this exception to the general principle that a court may not consider documents outside of the pleadings - without converting the motion to one for summary judgment - the complaint must rely heavily upon the document's terms and effects. See DiFolco, 622 F.3d at 111 ("Where a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effects, thereby rendering the document integral to the complaint.") (internal quotation marks omitted). "However, even if a document is integral to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document." Id. (internal quotation marks omitted) (quoting Faulkner v. Beer, 463 F.3d 130, 134 (2d Cir. 2006)). "It must also be clear that there exist no material disputed issues of fact regarding the relevance of the document." Id. "In most instances where this exception is recognized, the incorporated material is a contract or other legal document containing obligations upon which the plaintiff's complaint stands or falls, but which for some reason—usually because the document, read in its entirety, would undermine the legitimacy of the plaintiff's claim—was not attached to the complaint." Glob. Network Commc'ns, 458 F.3d at 157. The Second Circuit has "recognized the applicability of this exception where the documents consisted of emails that were part of a negotiation exchange that the plaintiff identified as the basis for its good faith and fair dealing claim, or consisted of contracts referenced in the complaint which were essential to the claims." United States ex rel. Foreman v. AECOM, 19 F.4th 85, 107–08 (2d Cir. 2021) (citations omitted) (first

citing L-7 Designs, Inc. v. Old Navy, LLC, 647 F.3d 419, 422 (2d Cir. 2011); and then citing

Chambers v. Time Warner, Inc., 282 F.3d 147, 153 n.4 (2d Cir. 2002)).

"Where a district court considers material outside of the pleadings that is not attached to

the complaint, incorporated by reference, or integral to the complaint, the district court, to decide

the issue on the merits, must convert the motion into one for summary judgment." AECOM, 19

F. 4th at 107-08. "This requirement 'deters trial courts from engaging in factfinding when ruling

on a motion to dismiss and ensures that when a trial judge considers evidence [outside] the

complaint, a plaintiff will have an opportunity to contest defendant's relied-upon evidence by

submitting material that controverts it.'" Id. (alteration in original) (quoting Glob. Network

Commc'ns, 458 F.3d at 155). "A district court therefore 'errs when it consider[s] affidavits and

exhibits submitted by defendants, or relies on factual allegations contained in legal briefs or

memoranda in ruling on a 12(b)(6) motion to dismiss.'" Id. (alteration in original) (quoting Friedl

v. City of New York, 210 F.3d 79, 83–84 (2d Cir. 2000)).

Here, the Complaint is devoid of any details as to the type of restraining order issued on

July 7, 2022, other than it was to be in effect through July 7, 2023. (Compl. ¶ 35.) Accordingly,

as the restraining order is not attached to the Complaint, and because the Complaint fails to

sufficiently plead what type of restraining order was issued and/or the language contained in the

restraining order, the Court declines to consider the restraining order.

Therefore, this Court respectfully recommends that Plaintiff's Complaint be dismissed

for failure to adequately plead her claims, as Plaintiff has failed to adequately plead the "clear

warning signals" upon which Suffolk County Police Officers failed to act.  However, as

discussed below, the Court includes here in its recommendation an alternative basis for dismissal

which relies on the restraining order. Even consideration of that order requires dismissal of Plaintiff's claims against the County.

B.      The Absence of a Duty Requires Dismissal

Assuming arguendo that the Court were to consider the restraining order, which is not part of the pleadings but is attached to Plaintiff's opposition to the motion, Plaintiff's claims would still be dismissed for failure to state a claim.

Plaintiff asserts that the Defendant violated her constitutional rights by alleging that Defendants "intentionally refuse to adhere to their duties" as police officers. The Supreme Court addressed a similar procedural due process claim in Town of Castle Rock v. Gonzales, 545 U.S. 748, 125 S. Ct. 2796, 162 L. Ed. 2d 658 (2005). In Castle Rock, the plaintiff obtained an order of protection that commanded her husband "not to molest or disturb the peace of [plaintiff] or of any child and to remain at least 100 yards from the family home at all times." Id. at 751, 125 S. Ct. 2796 (internal quotation marks omitted). There, plaintiff's husband abducted the couple's three young daughters, and despite plaintiff's repeated calls for help, police failed to respond. The husband ultimately murdered the children and was then killed in a shoot-out with police. Plaintiff sued the City of Castle Rock, along with the officers who handled her calls, for failing to enforce the order of protection.

Reversing an en banc decision of the United States Court of Appeals for the Tenth Circuit, the Supreme Court, in a 7–2 decision, rejected the argument that the victim had a constitutionally protected property interest in police enforcement of the order of protection. The Court began its analysis by explaining that DeShaney v. Winnebago County Department of Social Services, 489 U.S. 189, 109 S. Ct. 998, 103 L. ED. 2d 249 (1989), left open the question

9

whether a victim of a private act of violence may, under certain circumstances, have a constitutionally cognizable property interest in police protection. <u>Castle Rock</u>, 545 U.S. at 755.

The victim in <u>DeShaney</u>, Joshua DeShaney, was brutally and repeatedly beaten by his father. County social workers were aware of the abuse, took some steps to intervene, but decided not to permanently remove Joshua from his father's custody. After suffering permanent brain damage at the age of four as a result of the abuse, Joshua and his mother, as guardian ad litem, brought a § 1983 action alleging that county social workers "deprived Joshua of his liberty without due process of law ... by failing to intervene to protect him against a risk of violence at his father's hands of which they knew or should have known." <u>DeShaney</u>, 589 U.S at 193, 109 S. Ct. 998. <u>DeShaney</u> rejected plaintiff's substantive due process argument, explaining that "nothing in the language of the Due Process Clause itself requires the State to protect the life, liberty, and property of its citizens against invasion by private actors." Rather, the Court observed, "[t]he Clause is phrased as a limitation on the State's power to act, not as a guarantee of certain minimal levels of safety and security." <u>Id.</u> at 195, 109 S. Ct. 998. Therefore, the Court reasoned, "[i]f the Due Process Clause does not require the State to provide its citizens with particular protective services, it follows that the State cannot be held liable under the Clause for injuries that could have been averted had it chosen to provide them." <u>Id.</u> at 196–97, 109 S. Ct. 998.

In assessing the victim's procedural due process claim, the Supreme Court in <u>Castle Rock</u>, first looked at the terms of the order of protection. A preprinted warning on the back of the order provided:

> A KNOWING VIOLATION OF A RESTRAINING ORDER IS A CRIME ... A
> VIOLATION WILL ALSO CONSTITUTE CONTEMPT OF COURT. YOU
> MAY BE ARRESTED WITHOUT NOTICE IF A LAW ENFORCEMENT

OFFICER HAS PROBABLE CAUSE TO BELIEVE THAT YOU HAVE KNOWINGLY VIOLATED THIS ORDER.

Id. at 752, 125 S. Ct. 2796. Additional preprinted text on the back of the order set forth a

"NOTICE TO LAW ENFORCEMENT OFFICIALS" which stated:

> YOU SHALL USE EVERY REASONABLE MEANS TO ENFORCE THIS RESTRAINING ORDER. YOU SHALL ARREST, OR, IF AN ARREST WOULD BE IMPRACTICAL UNDER THE CIRCUMSTANCES, SEEK A WARRANT FOR THE ARREST OF THE RESTRAINED PERSON WHEN YOU HAVE INFORMATION AMOUNTING TO PROBABLE CAUSE THAT THE RESTRAINED PERSON HAS VIOLATED OR ATTEMPTED TO VIOLATE ANY PROVISION OF THIS ORDER....

Id. The Court then observed that the Notice "effectively restated the [Colorado] statutory provision describing 'peace officer's duties' related to the crime of violation of a restraining order." Id. at 758, 125 S. Ct. 2796. That provision stated, in relevant part:

> (a) ... A peace officer shall use every reasonable means to enforce a restraining order.
>
> (b) A peace officer shall arrest, or, if an arrest would be impractical under the circumstances, seek a warrant for the arrest of a restrained person when the peace officer has information amounting to probable cause....
>
> (c) ... A peace officer shall enforce a valid restraining order whether or not there is a record of the restraining order in the registry.

Id. at 758-59, 125 S. Ct. 2796 (quoting Colo. Rev. Stat. § 18-6-803.5(3) (1999)). The Supreme Court rejected the Court of Appeal's conclusion that

> this statutory provision—especially taken in conjunction with a statement from its legislative history, and with another statute restricting criminal and civil liability for officers making arrests—established the Colorado Legislature's clear intent to alter the fact that the police were not enforcing domestic abuse restraining orders, and thus its intent that the recipient of a domestic abuse restraining order have an entitlement to its enforcement.

Id. at 759-60, 125 S. Ct. 2796 (footnotes and internal quotes marks omitted).

11

Focusing on the "deep-rooted nature of law-enforcement discretion, even in the presence of seemingly mandatory legislative commands," id. at 761, 125 S. Ct. 2796, the Supreme Court stated that it did "not believe that these provisions of Colorado law truly made enforcement of restraining orders *mandatory.*" Id. at 760, 125 S. Ct. 2796. Rather, the Court observed, "[a] well-established tradition of police discretion has long coexisted with apparently mandatory arrest statutes." Id. Given this tradition, "a true mandate of police action would require some stronger indication from the Colorado Legislature than 'shall use every reasonable means to enforce a restraining order' (or even 'shall arrest ... or ... seek a warrant')." Id. As the Court explained:

> It is hard to imagine that a Colorado police officer would not have some discretion to determine that—despite probable cause to believe a restraining order has been violated—the circumstances of the violation or the competing duties of that officer or his agency counsel decisively against enforcement in a particular instance.

Id. at 761, 125 S. Ct. 2796. The Court stated, for example, that a police officer might properly choose "not to enforce a restraining order when the officer deems a technical violation too immaterial to justify arrest." Id. at 762 n. 8, 125 S. Ct. 2796 (internal quotation marks omitted).

Moreover, the Court noted, even if the statute could be construed as having made enforcement of the restraining order "mandatory," "that would not necessarily mean that state law gave *respondent* an entitlement to *enforcement* of the mandate." Id. at 764–65, 125 S. Ct. 2796. Rather, "[m]aking the actions of government employees obligatory can serve various legitimate ends other than the conferral of a benefit on a specific class of people." Id. at 765, 125 S. Ct. 2796. The Court observed, for example, that criminal statutes often serve public rather than private ends, as reflected by the discretion afforded a Colorado district attorney to pursue criminal prosecution under the statute even if the victim withdraws his or her complaint. Id. Moreover, "[t]he protected person's express power to 'initiate' civil contempt proceedings

12

contrasts tellingly with the mere ability to 'request' initiation of criminal contempt proceedings—and even more dramatically with the complete silence about any power to 'request' (much less demand) that an arrest be made." Id. at 766, 125 S. Ct. 2796.

Finally, the Court pointed out that even if it were to conclude that the Colorado statute created an entitlement to enforcement of a restraining order, "it is by no means clear that [such an entitlement] could constitute a 'property' interest for purposes of the Due Process Clause." Id. That is, "[s]uch a right would not, of course, resemble any traditional conception of property." Id.

Thus, the Court held, "[i]n light of today's decision and that in DeShaney, the benefit that a third party may receive from having someone else arrested for a crime generally does not trigger protections under the Due Process clause, neither in its procedural nor its 'substantive' manifestations." Id. at 768, 125 S. Ct. 2796.

Here, the July 7, 2022 restraining order appears to be an order directing Timothy to "refrain from" acts of domestic violence, such as assault, stalking, harassment, etc. (Pl. Opp., Ex. 1.) Plaintiff's opposition also contains two incident reports, dated July 9, 2022 and one from the date of the events, November 12, 2022. (Pl. Opp., Ex. 2 and Ex. 3, DE [54-7], [54-8].) A review of the incident reports reveals that the July 9, 2022 report reflects Plaintiff's belief that Timothy had shut off service to their daughter's phone and hid Plaintiff's phone. (Pl. Opp., Ex. 2.) The report indicates that while Plaintiff claimed she was in fear that Timothy would kill her and her children, she reported that Timothy had not previously threatened to kill her or the children, never choked or strangled her, and never beat her while pregnant. (Id.)

The November 12, 2022 incident report reflects that Plaintiff again told the police that Timothy has never threatened to kill her or the children, never choked or strangled her, and never

13

beat her while pregnant. (Pl. Opp., Ex. 3.) The report indicates that Plaintiff told the officers this time that Timothy was not capable of killing her or the children, that he was not violently and constantly jealous of her, and that the physical violence had not increased in frequency or severity over the past six months. (Id.) The report further indicates that both Timothy and Plaintiff refused emergency housing. (Id.)

When viewed in light of Castle Rock, the officers in Castle Rock arguably had greater knowledge of a threat to the victim, and yet, the Supreme Court still declined to hold that the benefit that a third party may receive from having someone else arrested for a crime generally does not trigger protections under the Due Process clause. Castle Rock, 545 U.S. at 768.

Further, in Castle Rock, the restraining order at issue directed the husband "not to molest or disturb the peace of the respondent or any child" and to always remain 100 feet from the family home. Here, the July 7, 2022 restraining order was an order directing Timothy to refrain from committing acts of domestic violence. Yet, the Supreme Court still found that the respondent in Castle Rock was not entitled to have the husband arrested. Here, Plaintiff did not report any specific threats of violence or acts that amounted to a violation of the July 7, 2022 refrain from order of protection. Thus, no duty to arrest was triggered.

Furthermore, in Harrington v. Cty. of Suffolk, 607 F.3d 31 (2d Cir. 2010), the Second Circuit found that despite Suffolk County Code §C13-6 stating that it "shall be" the duty of SCPD "to preserve the public peace, prevent crime, detect and arrest offenders, and protect the rights of persons and property and enforce all laws and ordinances applicable to the County," said provision does not give plaintiffs or any other victim of a crime "a legitimate claim of entitlement" to a police investigation, much less an investigation conforming with certain minimal standards. Harrington, 607 F.3d at 35.

14

Accordingly, even when considering Plaintiff's exhibits, Plaintiff has failed to allege "clear warning signals" upon which Suffolk County Police Officers failed to act. Thus, assuming arguendo that the July 7, 2022 restraining order and two incident reports were considered, Plaintiff's allegations still fail to adequately allege a claim. Therefore, this Court respectfully recommends that Defendant's motion to dismiss be granted and the Complaint dismissed in its entirety.

## CONCLUSION

For the foregoing reasons, this Court respectfully recommends that Defendant's motion to dismiss, found at docket entry No. 54 herein, be granted.

## OBJECTIONS

A copy of this Report and Recommendation is being provided to all counsel via ECF. Further, the Court is directing Defendant to serve a copy of this Report and Recommendation by overnight mail and first-class mail to Timothy Butler at their known address(es) and to file proof of service on ECF by February 5, 2026.  Any written objections to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of filing of this report.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 72(b).  Any requests for an extension of time for filing objections must be directed to the District Judge assigned to this action prior to the expiration of the fourteen (14) day period for filing objections.  Failure to file objections within fourteen (14) days may preclude further review of this report and recommendation either by the District Court or Court of Appeals. Thomas v. Arn, 474 U.S. 140, 145 (1985) ("[A] party shall file objections with the district court or else waive right to appeal."); Caidor v. Onondaga Cnty., 517 F.3d 601, 604 (2d Cir. 2008) ("[F]ailure to object timely to a magistrate's report operates as a waiver of any further judicial review of the magistrate's decision").

15

Dated:  Central Islip, New York
        February 3, 2026

                                                  /s/ Anne Y. Shields
                                                 Anne Y. Shields
                                                 United States Magistrate Judge